# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TONIA OLIVER,

    Plaintiff,

v.

SCRANTON MATERIALS, INC.,

    Defendant.

3:14-CV-00549
(Judge Mariani)

## MEMORANDUM OPINION

## I. Introduction

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint for failure to state a claim (Doc. 10) in this employment discrimination action. For the reasons that follow, the Court will grant the Motion in part and deny it in part.

## II. Factual Allegations

Plaintiff's Complaint alleges the following facts, which the Court accepts as true for purposes of the Motion to Dismiss.

Plaintiff, Tonia Oliver, is a woman who was pregnant with triplets in 2011. (Compl., Doc. 1, at ¶¶ 1-2, 11, 15.) At the time of her pregnancy, Plaintiff worked for the Defendant, Scranton Materials "in an executive capacity in which she handled stone accounts." (Id. at ¶ 9.) She alleges that "[a]t all relevant times, [Plaintiff][1] was qualified for her position, and

---

[1] The actual Complaint reads "*defendant* was qualified for her position." The Court construes this as a typographical error.

performed her job duties in the manner required by defendant." (*Id.* at ¶ 10.) "In the late spring or early summer of 2011, plaintiff made defendant, particularly her supervisor, [John] Scarantino, aware that she was pregnant." (*Id.* at ¶ 11.) Mr. Scarantino "was not happy about the pregnancy" and proceeded to subject Plaintiff "to a hostile and retaliatory work environment" by "cutting her out of important meetings and completely excluding her from activities relating to [a project] she was responsible for" as well as making "gender and pregnancy based comments toward plaintiff such as 'he didn't see how it would be possible' for her to work with young children" and remarking "f---ing babies" at least once. (*Id.* at ¶¶ 12-14.)

Plaintiff intended to return to work following the birth of her triplets and "repeatedly assured Scarantino" to that effect. (*Id.* at ¶ 15.) However, "[o]n or about July 25, 2011, plaintiff notified defendant that due to complications from her pregnancy and undue stress created by Scarantino at work, she would need to go on short-term disability." (*Id.* at ¶ 16.) "During the period of her pregnancy related disability leave, plaintiff continued to assure defendant of her intent to return to work sometime in December of 2011." (*Id.* at ¶ 17.) However,

> on or around December 6, 2011, plaintiff e-mailed defendant that due to the complications of her pregnancy and associated surgery she would need to remain off work for an additional 4 weeks, but that she would be cleared to work, and intended to return to work with no restrictions as of January 2, 2012.

(*Id.* at ¶ 18.)

2

Shortly after Plaintiff sent her email, i.e., "[o]n or about December 8, 2011 . . . Scarantino informed [Plaintiff] by phone that her employment was being terminated effective January 2, 2012 and she would not be permitted to return to work." (*Id.* at ¶ 19.) "At or around the same time, defendant laid off at least two male employees," but "[t]hose male employees were later permitted to return to work, while plaintiff was not permitted to return." (*Id.* at ¶¶ 20-21.)

### III. Procedural History

Plaintiff alleges that she "filed a timely charge of discrimination with . . . the Equal Employment Opportunity Commission (EEOC)" and that the EEOC thereafter "issued a 'notice of right to sue' letter dated December 19, 2013." (*Id.* at ¶¶ 6-7.) She then filed the instant Complaint, which asserts violations of the following statutory provisions: 42 U.S.C. § 2000e-2 (Count I), 42 U.S.C. § 2000e-3 (Count II), and 42 U.S.C. § 12101, et seq. (Count III).

Defendant filed a Motion to Dismiss, which seeks dismissal of the Complaint in its entirety. (*See* Mot. to Dismiss, Doc. 10, at 1.)

### IV. Standard of Review

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

3

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations and alterations omitted). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555, 127 S. Ct. at 1965. A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

4

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

However, even if a "complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id*.

## V. Analysis

### a. Timeliness of Counts I and II

At the outset, Defendant argues that what it characterizes as Plaintiff's "hostile work environment" and "retaliation" claims (Counts I and II, respectively) must be dismissed because Plaintiff did not timely file the necessary Charge of Discrimination with the EEOC, which is a condition precedent to proceeding with her claims. (*See* Doc. 10 at 4-7.) Plaintiff was required to file the Charge "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Defendant argues that, because "Plaintiff's Complaint confirms that the last day Plaintiff physically worked for the Defendant was on July 25, 2011," then "the purported retaliatory acts referenced in the

5

Complaint could only have occurred on or before that day." (*See* Doc. 10 at 6.) Therefore, Defendant argues that she was required to "file her administrative charge . . . with the EEOC on or before May 20, 2012—at the very latest." (*Id.*) But Defendant attaches as an Exhibit to its Motion to Dismiss a document entitled "Charge of Discrimination—Statement of Particulars" which is stamped as having been received by the EEOC on August 1, 2012, several months after the three hundred days expired. (*See* Doc. 10, Ex. 2.) Plaintiff, on the other hand, submits a cover letter signed by her counsel and dated May 11, 2012, which states, "By way of this correspondence, Ms. Oliver files a charge of discrimination and retaliation against her former employer, Scranton Materials." (Pl.'s Br. in Opp. to Mot. to Dismiss, Doc. 15, Ex. A.) Only the cover letter is submitted, not the supposedly accompanying Charge.

The Court cannot accept Defendant's timeliness argument. First, "the pleading of conditions precedent [to filing suit] is governed by Rule 9(c), not Rule 8(a)." *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014). Rule 9(c) only provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). Plaintiff already alleged that all conditions precedent have been performed in her Complaint. (Compl. at ¶ 6.) Because "neither *Iqbal* nor *Twombly* purport to alter Rule 9," *Hildebrand*, 757 F.3d at 112, Plaintiff's general allegation that all conditions precedent have been satisfied is enough to avoid dismissal on this basis.

Second, even if this Court were to evaluate the date of the charge at the Motion to Dismiss stage by looking to information outside the pleadings, dismissal would still be inappropriate. The Court may, in the Motion to Dismiss stage, "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). But here, even assuming (1) that Plaintiff's claims are "based" on her Charge, in that she alludes to it in the Complaint, (*see* Compl. at ¶ 6), and (2) that Defendant's July 25 date is the date on which the three-hundred day period began to run (as opposed, for example, to January 2, 2012, the date on which Plaintiff was not allowed back to work), the document that Defendant submits is not "undisputedly authentic," for the simple reason that the parties dispute whether it is in fact the initial Charge that Plaintiff submitted. (*See* Doc. 15 at 2-3 ("Simply put, the 'Charge' attached by defendant to its motion to dismiss is incomplete and is not the initial Charge.")). Therefore, the Court cannot consider Defendant's document at the Motion to Dismiss stage. Nor could the Court resolve the matter by converting the Motion to Dismiss into one for summary judgment because, at this stage, the Court has no way of determining, without any discovery, which of the two competing documents represents the authentic filing date. In so deciding, the Court also notes that even filings such as an intake questionnaire can satisfy the charge requirement under Title VII, so long as they provide the information that the EEOC requires from an official charge. *See Pizio v. HTMT Global Solutions*, 555 Fed.

App'x 169, 174 (3d Cir. 2014). Thus, even if we assume that the documents submitted to the Court are authentic, they are not necessarily dispositive as to the actual charge date.

### b. Count I

Next, Defendant argues that Plaintiff fails to state a claim for a hostile work environment or discrimination claim as alleged in Count I. (Doc. 10 at 7-10.)

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This language "is not limited to 'economic' or 'tangible' discrimination" and "includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (internal citations and quotation marks omitted). Likewise, the Pregnancy Discrimination Act, which is codified within Title VII, provides that

> [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k).

Defendant focuses on the standards for proving a "hostile working environment" and then concludes that Plaintiff has not pled sufficient acts to show the "'pervasive and regular'

8

discrimination" that Defendant argues is "required to sustain a hostile work environment as a matter of law." (Doc. 10 at 9.) \

The Supreme Court has held that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S. Ct. at 370. To determine whether an environment is hostile, the Court must look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S. Ct. at 371. "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998) (internal citations and quotation marks omitted).

However, Count I of the instant Complaint does not only allege a "hostile work environment;" it also alleges that "Defendant's conduct . . . has deprived plaintiff of employment opportunities and adversely affected her status as an employee," which appears to be a reference to her termination on January 2. (*See* Compl. at ¶ 24.) The Complaint does not neatly separate the allegations pertaining to a "hostile work

environment" and those related to Plaintiff's alleged discriminatory termination. When the Court views the claim as a whole, and notes allegations concerning derogatory pregnancy-based comments, (*id.* at ¶ 14), Plaintiff's exclusion from important meetings and activities, (*id.* at ¶ 13), and Plaintiff's being terminated when other male employees were allowed to return to work, (*id.* at ¶¶ 19-21), the Court believes that Plaintiff has alleged enough facts to state a claim under section 2000e-5 and survive a Rule 12(b)(6) motion to dismiss. This does not mean that the Court takes any position on whether the Plaintiff's 2000e-5 claim will ultimately succeed. But whether or not the claim has substantive merit is a question that cannot be resolved on the pleadings.

Accordingly, the Court will not dismiss Count I.

### c. Count II

Next, Defendant attacks Plaintiff's retaliation claim on the ground that Plaintiff did not plead an essential element of the statute: namely, that she engaged in a protected activity. (*See* Doc. 10 at 11.) On the subject of retaliation, Title VII provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

> To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there

was a causal connection between her participation in the protected activity and the adverse employment action."

Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).

Though the Complaint does not directly state what "protected activity" occurred, Plaintiff's Opposition Brief elaborates that "plaintiff engaged in protected activity under Title VII and specifically the Pregnancy Discrimination Act . . . when she requested additional time off on December 6, 2011, due to complications of her pregnancy." (Doc. 15 at 5.) Plaintiff notes that, as alleged in the Complaint, "within just two days of her request, on December 8, 2011, defendant retaliated by terminating her employment with an effective date of January 2, 2012." (Id.)

In deciding whether Plaintiff "opposed" an unlawful employment practice sufficient to bring her under the antiretaliation section's protections, we are guided by the Supreme Court's direction that "[t]he term 'oppose,' being left undefined by the statue, carries its ordinary meaning: 'to resist or antagonize; to contend against; to confront; resist; withstand." Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276, 129 S. Ct. 846, 850, 172 L. Ed. 2d 650 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1958)) (internal citations and alterations omitted). But when this Court reads the term "oppose" in its ordinary meaning, it becomes clear that simply requesting additional maternity or disability leave cannot constitute "opposing" an unlawful employment practice, because it does not "confront" that practice in any way. While Plaintiff could argue that

11

termination based on her pregnancy-related leave request could constitute *discrimination* under Title VII, she cannot plausibly argue that it "constitutes retaliation for opposition to unlawful policies" without stretching terms far beyond their ordinary meanings. The few courts that have addressed this issue agree with this conclusion. *See McCormick v. Allegheny Valley Sch.*, 2008 WL 355617, at *17 (E.D. Pa. 2008) ("A simple request for maternity leave cannot satisfy the first prong of the test because it involves *no* protest (formal or informal) of an unlawful practice. Therefore, such a request cannot constitute a statutorily protected activity for purposes of a Title VII retaliation claim."); *see also Demers v. Adams Homes of Nw. Florida, Inc.*, 321 Fed. App'x 847, 853 (11th Cir. 2009) (describing evidence related to defendant's "decision to refuse Demers's maternity leave request" as "irrelevant" to a retaliation claim because "a retaliation cause of action . . . concerns Demers's termination following her opposition to discrimination, not the incident giving rise to her opposition"); *Tolleson v. Unity Health Sys.*, 2012 WL 1834206, at *7-8 (W.D.N.Y. 2012) ("Here, Plaintiff maintains that Defendant fired her immediately after learning that she was preparing to take short-term disability leave related to her pregnancy. To the extent that Plaintiff characterizes her actions, in obtaining forms and information regarding such leave as protected activity, the Court disagrees. Merely requesting disability leave or maternity leave is not protected activity under Title VII. This in no way suggests that employers may penalize employees for taking maternity leave. Clearly, they cannot. In the Court's view, though, the appropriate claim is one for discrimination, not retaliation.") (citing

*Demers*, 321 Fed. App'x at 852; *McCormick*, 2008 WL 355617 at *16-17); *Lard v. Alabama Beverage Control Bd.*, 2012 WL 3292916, at *3 (M.D. Ala. 2012) (citing with approval *Demers*'s explanation "that a mere request for maternity leave is not sufficient to constitute protected activity").

Accordingly, the Court will dismiss Count II without prejudice and with leave to amend, as discussed in section V.e., *infra*.

### d. Count III

Finally, Defendant argues that Count III, which alleges disability discrimination under the Americans with Disabilities Act (ADA), must be dismissed on the ground that pregnancy is not a "disability" under the Act. (Doc. 10 at 14.) Plaintiff counters that her ADA claim "is not based upon the mere fact that she was pregnant, but is based upon the medical complications associated with her high risk pregnancy with triplets and the medical impairments caused by both the complications and her need for surgery at the time of birth." (Doc. 15 at 6 (citing Compl. at ¶ 18).)

The Americans with Disabilities Act of 1990 provides that an individual is "disabled" when he or she suffers, among other things, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). In 2008, Congress passed the ADA Amendments Act (ADAAA), which loosens the standards by which courts are to interpret the ADA's language and specifically provides that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of

individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id.* at § 12102(4)(A).

Under the ADAAA "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]." *Id.* at § 12102(4)(B). Congress stated that its intent in passing the ADAAA included "convey[ing] that the question of whether an individual's impairment is a disability under the ADA should not require extensive analysis" and that the then-existing standard that courts applied to the term "substantially limits" had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA." *See* Pub. L. 110-325, 122 Stat. 3553, § 2(b)(5). Thus, the relevant regulations now provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *Id.* at § 1630.2(j)(1)(iv). Moreover, the Regulations now specifically provide that "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section." *Id.* at § 1630.2(j)(1)(ix). Thus, while pregnancy by itself may not constitute a disability under the ADA, *see, e.g., Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 333 (E.D. Pa. 1994), courts interpreting the Act in light of the 2008 amendments have found that *complications arising out of pregnancy* can constitute disability sufficient to invoke the ADA, and that whether they actually rise to the level of disability is a question of fact. *See, e.g.,*

14

*Nayak v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2013 WL 121838, at *2-3 (S.D. Ind. 2013); *Mayorga v. Alorica, Inc.*, 2012 WL 3043021, at *5 (S.D. Fla. 2012) (collecting cases); *see also Darian v. Univ. of Massachusetts-Boston*, 980 F. Supp. 77, 85 (D. Mass. 1997) (pre-ADAAA case, noting that "[b]y its terms, though pregnancy *per se* is not covered by the ADA, the Act does not necessarily exclude all pregnancy-related conditions and complications").

In light of this background, the Court cannot find that Plaintiff's alleged "pregnancy-related complications" do not give rise to an ADA claim as a matter of law. However, the Complaint does not specify what "complications" and "surgery" Plaintiff actually experienced, but only recites, in talismanic fashion, that some complications and surgery occurred. (*See* Compl. at ¶¶ 16, 18, 33.) When Plaintiff does not provide the Court with any indication of what occurred to support her disability allegations, the Court cannot engage in the necessary "individualized assessment" to determine whether she can state a claim under the ADA. Her pleadings constitute a paradigmatic example of a "formulaic recitation of a cause of action's elements" that does not state "the grounds of [Plaintiff's] entitlement to relief." In situations such as this, dismissal for failure to state a claim is warranted under *Twombly* and *Iqbal*.

Accordingly, the Court will dismiss Count III.

### e. Dismissal is Without Prejudice

The Court does not believe that granting Plaintiff leave to amend would be inequitable or futile. Count III will only be dismissed based on Plaintiff's failure to allege specific facts supporting her entitlement to relief, and therefore could be cured by a more specific pleading. And while the Court sees nothing in Plaintiff's Complaint that could support Count II as a matter of law, the Court will give Plaintiff a final opportunity to plead specific facts that may have been omitted from the original pleadings that could support a retaliation claim.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 10) is **GRANTED IN PART AND DENIED IN PART**. A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge